UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 12-80104-CR-MARRA/MATTHEWMAN

UNITED STATES OF AMERICA

Plaintiff,

vs.

EDWARD KLAPP IV,

Defendant.

_______________________________/

FILED IN OPEN COURT
JUL 20 2012
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

**STIPULATED FACTUAL PROFFER IN SUPPORT OF THE GUILTY PLEA**

COMES NOW, the United States of America, by and through its undersigned Assistant United States Attorney, and the defendant together with his counsel and stipulate to the following as the factual basis in support of the defendant's pleas of guilty. The defendant, **EDWARD KLAPP IV**, admits the allegations contained within the indictment charging him with violation of Title 18, United States Code, Section 1956(h) and also stipulates that those allegations and the following recitation of the facts shall constitute the underlying factual basis for entry of pleas of guilty to the information in this case:

I, **EDWARD KLAPP IV,** hereby acknowledge the Government could prove beyond a reasonable doubt, and admit my role in the following:

On October 15, 2010, co-conspirator CHARLES W. CART came together with Francis Santa, a cooperating defendant, as a result of a previous relationship they had through which CART had obtained loans. CART returned to Santa seeking additional moneys for the purpose of making payments on the outstanding loans which were slipping

into default. CART reasoned that if he could obtain another loan he could keep up payments on the loans which were soon to go into default, avoid the loss of his family home which was the collateral for the loans and keep his ex-wife happy. On October 20, 2010, CART returned to meet with Santa and an undercover agent (UCE) regarding the loan and credit line he was seeking. At this meeting CART gave UCE three checks representing payment for the false income tax returns ($300) and bribes for the banker helping to obtain the loans ($350 and $750) all payable to Falcon Financial Management Group, an FBI undercover company. In addition, CART signed the falsely created income tax returns which were to be used in support of applying for money from banks.

During the course of the meetings on October 15 and 20, 2010, the suggestion that Santa's friend, UCE, had money to launder was discussed with CART. CART expressed interest in laundering funds for UCE and indicated that his friend, EDWARD KLAPP, would be a person available to help CART launder funds. During these meetings, and especially during the October 20, 2010, meeting at which UCE participated, CART was told that the source of the money UCE wanted to launder was drug trafficking.

On November 1, 2010, CART and defendant **KLAPP** met with UCE and Santa. The purpose of the meeting was to discuss laundering funds derived from drug trafficking which UCE purportedly had. **KLAPP** was identified at this meeting as **EDWARD KLAPP IV**. During the meeting CART and **KLAPP** agree to launder drug funds for UCE. Additionally, **KLAPP** discussed obtaining a line of credit or a loan in the name of his company through UCE and Santa.

On November 10, 2010, CART and **KLAPP** met with UCE and Santa again. During this meeting UCE gaves CART and **KLAPP** $100,000 to launder for him, making clear that the source of the funds was drug trafficking. Additionally, the parties agreed that CART and **KLAPP** would be paid 8% of the money they took from UCE to launder. Consequently, $92,000 of the money provided that day was designated for laundering and $8,000 was the commission to be split by CART and **KLAPP** for their services. After **KLAPP** left the meeting that day, UCE gave CART an additional $30,000 to launder for UCE. CART and UCE agreed that CART would receive a 5% commission to launder this additional money. UCE gave CART $1500, in addition to the $30,000 CART agreed to launder, which represented CART's commission (for a total transfer to CART of $31,500).

On November 17, 2010, a meeting between the parties was scheduled. **KLAPP** arrived before CART. During this first portion of the meeting attended by **KLAPP**, Santa and UCE, **KLAPP** agreed to obtain a loan and line of credit through UCE and Santa. **KLAPP** provided checks payable to Falcon Financial Management Group (an FBI undercover business) to UCE for the purpose of obtaining fraudulent income tax returns which would show that Pharma Holdings, Inc., **KLAPP's** business, made a profit during calendar years 2008 and 2009 when, according to income tax returns purported to be real which were provided by **KLAPP**, the company lost $110,358 during 2009. **KLAPP** provided the 2009 income tax returns showing a loss to UCE to use as a "stencil" for the false returns. **KLAPP** paid UCE a total of $500 for the tax returns and $1,500 to bribe a banker to assist getting the loans.

During the meeting on November 17, 2010, after CART joined the group, **KLAPP** provided UCE with receipts to show as the source of money **KLAPP** laundered for UCE. These receipts were provided by **KLAPP** in the event that a law enforcement official began to question the source of the moneys deposited into UCE's accounts. The receipts gave the appearance that UCE's companies were providing accounting and medical transcription services to several companies controlled by **KLAPP**, none of which was true. **KLAPP** provided documentation to UCE to show all of the deposits related to the moneys he laundered. UCE gave **KLAPP** and CART an additional $100,000 during this meeting to launder for UCE, which was again represented to be the proceeds of drug trafficking.

On November 23, 2010, **KLAPP** and CART met with UCE and Santa to discuss the continuing money laundering activities. During this meeting receipts were provided to UCE to show the laundering activities. CART laundered $40,000 and **KLAPP** laundered the remaining $60,000 which had been given them during the previous meeting. **KLAPP** had various individuals obtain money orders with the cash provided for some of the laundering activities and provided UCE with unsigned money orders. During the meeting UCE and **KLAPP** signed the money orders using fake names and addresses.

On December 3, 2010, UCE met with **KLAPP** for the purpose of **KLAPP** signing the false and fraudulently created tax returns prepared in support of **KLAPP**'s application for one or more loans from FDIC insured banks. During the initial part of the meeting **KLAPP** signed tax returns which gave the appearance that Pharma Holdings, Inc., had profits for 2008 and 2009 when, in fact, according to **KLAPP**, the company lost money as indicated

by the 2009 return provided by **KLAPP** to UCE on November 17, 2010. **KLAPP** indicated during this meeting that he knew the false tax returns were created to support loan applications to banks. Immediately after the documents were signed **KLAPP** was confronted with his criminal activities.

On December 3, 2010 **KLAPP** confessed to Special Agents Him-Verlarde and Longo the following: **KLAPP** admitted he received $200,000 from UCE, which **KLAPP** understood represented proceeds for drug trafficking, for the purpose of laundering those proceeds. **KLAPP** indicated that $184,000 was laundered and the remaining $16,000 was kept by **KLAPP** and CART as commission for laundering. **KLAPP** admitted that he was working and cooperating with CART to launder the money provided by UCE. **KLAPP** also admitted that the tax returns he signed that day were false and were created for the purpose of applying for loans from banks. **KLAPP** admitted that he paid for the false tax returns and also provided money to bribe bankers to help obtain at least one loan.

CART was confronted on December 3, 2010 with his activities in conjunction with **KLAPP**, UCE and Santa. CART admitted obtaining two loans through Santa: a $500,000 mortgage on his home and a $129,000 line of credit secured by the home. CART admitted that he forged his wife's signature on the $129,000 line of credit and placed the loan in her name as CART indicated his wife would not sign for this additional loan. CART also admitted that he signed the fraudulent and false tax returns in the name of Procyon Realty & Development, Corp., for the purpose of gaining additional loan moneys from one or more banks. Finally, CART admitted that worked with **KLAPP** to launder $200,000 provided to

them by UCE and also received an additional $30,000 from UCE which he laundered. CART admitted that he understood the money was the proceeds of drug trafficking when he took the money to launder. CART indicated he understood he and **KLAPP** were earning an 8% commission on the $200,000 they were laundering together and a 5% commission on the $30,000 CART laundered independently of **KLAPP**.

**KLAPP** acknowledges and admits that all of the matters related to this case which occurred in the presence of Santa and UCE were recorded by audio and/or video recording machines. **KLAPP** admits that those recordings accurately depict the recorded communications and meetings.

Defendant **KLAPP** acknowledges that the elements of the offense of conspiring to launder money, as found at Title 18, United States Code, Section 1956(h), are as follows:

First: two or more people agreed to try to accomplish a common and unlawful plan to violate 18 U.S.C. Section 1956 or 1957; and

Second: the Defendant knew about the plan's unlawful purpose and willfully joined in it.

Defendant KLAPP also acknowledges the elements of money laundering funds represented by a law enforcement agency as being derived from drug trafficking, as found at Title 18, United States Code, Section 1956(a)(3)(B) are:

First: the Defendant knowingly conducted a financial transaction;

Second: the transaction involved property that a law-enforcement officer represented as coming from a specified unlawful activity; and

Third: the Defendant engaged in the transaction with the intent to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity

*United States v. Edward Klapp IV*
*Case No.12-80104-CR-Marra/Matthewman*

Defendant **KLAPP** agrees that the facts stated above prove the elements of the offense.

I, **EDWARD KLAPP IV**, admit that the statements contained in this Proffer are true and correct and agree that the United States can use them for any purpose, whether I plead guilty or not, including as evidence in a case-in-chief against me in any trial. I specifically waive any rights I may otherwise have under Federal Rule of Evidence 410 and Rule 11 of the Federal Rules of Criminal Procedure. I further acknowledge that I have reviewed this statement and the rights I am waiving with my attorney, Michael B. Cohen, Esq., and am satisfied with the representation of my attorney in this matter.

I, **EDWARD KLAPP IV**, am pleading guilty to Count 1 of the Indictment filed in this case because I am in fact guilty of the charges.

Respectfully Submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

7/20/2012
DATE

By: ELLEN L. COHEN
ASSISTANT UNITED STATES ATTORNEY

7/20/12
DATE

MICHAEL B. COHEN
ATTORNEY FOR EDWARD KLAPP IV

7/20/12
DATE

EDWARD KLAPP IV
DEFENDANT